*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  [The Military Commission was called to order at 1331,

2  28 January 2013.]

3      MJ [COL POHL]:  Please be seated.  Commission is called

4  to order.  It appears all parties again are present that were

5  present when the commission recessed.  Correct?  Trial

6  counsel, is that correct?

7      TC [BG MARTINS]:  Yes, Your Honor.

8      MJ [COL POHL]:  Defense appears to be the same.

9          Trial counsel, we have not apparently had a

10 bailiff today, I know there is a lot of fingers in this pie,

11 can you ensure in the future we have a bailiff for each

12 session.

13     TC [BG MARTINS]:  Yes, Your Honor.

14     MJ [COL POHL]:  Okay.  That would appear to bring us to

15 13 Tango.

16     LDC [MR. CONNELL]:  Your Honor, I'm willing to go

17 forward with 13 Tango.  We are also prepared to proceed on the

18 advisement of right to precedence.  I say because that is what

19 I understood the court was going ----

20     MJ [COL POHL]:  I will do that last thing.

21     LDC [MR. CONNELL]:  Right, just one moment, please.

22     MJ [COL POHL]:  For planning purposes, that would be

23 around 1445, plus or minus.

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

1    LDC [MR. CONNELL]:  Can I have the feed from table 4,

2  please?

3        Your Honor, I previously supplied these slides to

4  the court security officer for review.  I would ask permission

5  to publish them and that they may be part of the record as the

6  next valid exhibit letter.

7    MJ [COL POHL]:  Okay.  Go ahead.

8    LDC [MR. CONNELL]:  I've adjusted the microphone.  Does

9  that help?

10    MJ [COL POHL]:  Okay.

11    LDC [CDR RUIZ]:  I'm having issues hearing counsel and

12  other conversations.

13    MJ [COL POHL]:  Some of these mics amplify more than

14  others, so please speak in your loud voice.  Go ahead.

15    LDC [MR. CONNELL]:  Your Honor, this is a small, almost

16  tiny issue, but an important one.  The wording of the

17  memorandum of agreement in paragraph 5(a)(2) uses the language

18  of agreement.  It is the language of defense counsel agreeing

19  to comply and agreeing to be bound.

20        Now, the prosecution says in its response -- I'm

21  sorry, back one slide, Colonel.  My fault.  The issue is that

22  we should, in order to receive classified discovery we should

23  not be required to take the risk of waiving the issues that

**UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  we've raised.  The prosecution says in its response that under

2  the text of its agreement is not a waiver.  That is perfectly

3  fine.  I agree that agreement -- I'm perfectly happy to say

4  agreement is not a waiver, except for the fact that the

5  prosecution does not seem bound by its procedural views.

6          I want to point out an issue that was very briefly

7  touched on earlier, which is at the last hearing the court

8  instructed the prosecution that you were going to issue a

9  protective order which became AE 13 Papa and that either side

10  can revisit the wording.  And the prosecution agreed with that

11  view.  They said, yes, I think that's the way we should do it.

12  I have the slide, just a little bit of that, but it actually

13  went on for three pages in the transcript.

14          In their response to 13 Romeo, Sierra, and Tango

15  the prosecution took the position that reconsideration, as it

16  styled it, was not allowed under the circumstances because we

17  weren't raising any new issues.  I'm not arguing the merits of

18  that.  The Court has made its view clear on that.

19          What it does point out is that over time the

20  government can decide, even though it thought something was

21  not a procedural default in the first instance, it can decide

22  later that strategic procedural default.  This can very easily

23  happen on appeal.  The appellate courts are sensitive to

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1 waiving issues that one has brought up.  And I don't want it

2 to look like I am waiving the issues that I have brought up by

3 agreeing to the protective order.

4        There is a very simple solution, it only requires

5 a small amount of change, and it involves changing the word

6 "agreeing," if we can get to the next slide.  Thank you.

7        If we change "agreeing to comply" with to

8 "acknowledging a duty to comply," I have no problem with it.

9 And if we change that "I agree to be bound by the terms of the

10 order" to "I acknowledge that I am bound by terms of the

11 order," that is me acquiescing in the order of the court

12 rather than me voluntarily agreeing to the terms of the order.

13        I have nothing further to say about it.

14    MJ [COL POHL]:  Trial counsel, do you wish to be heard

15 on this one?

16    ATC [LT KORCZYNSKI]:  Good afternoon, sir.  Kiersten

17 Korczynski for the Unites States.

18        Sir, on defense's motion the defense argues this

19 provision forces defense counsel to waive any other claims of

20 error.  The government would simply state they have objected

21 to this provision in this filing.  They objected to the

22 protective order previously and there has been extensive oral

23 argument on this motion.  We believe any concern they have

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   about waiving is preserved.

2          801(g) states the failure to raise that objection

3   could cause that forfeiture, that waiver.  That is not the

4   case here.  Further, the government would just note that

5   acknowledgment is not an agreement to be bound by the order.

6          If the defense counsel wants to proceed through

7   this, to this case through the discovery portion of this case,

8   they must agree to be bound by the protective order, in which

9   case the government can then turn over the classified

10  discovery here.  This is perfectly consistent with 505(e),

11  which states military judge shall issue the protective order,

12  and these provisions are consistent with duties they would

13  have as security clearance holders.

14         The government is providing a great deal of

15  classified information, intends to provide a great deal of

16  classified information in discovery of this case.  We want to

17  ensure that the protection of that information occurs.  And we

18  believe simply acknowledging a duty is different than an

19  agreement to be bound by that duty.  As such, we would ask the

20  language remain the same and the defense counsel sign the MOU

21  so we can move forward in this case, to address defense

22  counsel's first point as they put transcripts up from the last

23  hearing.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1        I believe Ms. Baltes may have discussed this at

2   the last hearing.  The concern about revisiting this

3   protective order becomes an issue as we try to move forward in

4   providing discovery, because the question has to be begged,

5   how many more motions to reconsider the protective order can

6   the government expect when as Mr. Connell notes in all these

7   13 motions here they were, they were discussed extensively at

8   length.

9        MJ [COL POHL]:  Yes, but at that point in time they had

10  the government's proffered order, their suggested changes, but

11  they didn't have my order.

12       TC [LT KORCZYNSKI]:  Yes, sir, that is true, that is

13  true.

14       MJ [COL POHL]:  So that is what is new in this case.

15  They now know what the commission's position is in that they

16  want to respond to what they have.

17       TC [LT KORCZYNSKI]:  Yes, sir.

18       MJ [COL POHL]:  I think you are correct, as general

19  principle reconsiderations requires something new in this case

20  something new was a final, final as anything is in this case,

21  a final protective order issued by the commission.

22       TC [LT KORCZYNSKI]:  Yes, sir.  Fair enough, sir.  Other

23  than that, sir, unless you have any questions.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1      MJ [COL POHL]:  Thank you, I don't.

2      LDC [MR. CONNELL]:  Because the prosecution made a new

3  argument in its oral presentation, the argument of the

4  prosecution in oral argument is different from on brief.

5           In oral argument their argument is that agreement

6  and acknowledgment are not the same.  That agreement adds

7  something else.  That is my concern, that if agreement adds

8  something else, that it adds a measure of voluntary compliance

9  on my part which an appellate court can construe as a waiver.

10     MJ [COL POHL]:  Mr. Connell, if you are told that the

11  only way you can get the discovery in this case is to sign the

12  MOU as drafted, then you have objected to the language and

13  your objection is, let's say, hypothetically overruled.  You

14  think they are going to say that is now a voluntary waiver of

15  your objection?

16     LDC [MR. CONNELL]:  Your Honor, I come from Virginia

17  where my state practice is.  Virginia has a very, very strict

18  waiver rule.  It is called the approbate and reprobate rule.

19  What it says ----

20     MJ [COL POHL]:  Mr. Connell, I can't deal with every

21  possible scenario, because I hear this frequently in every

22  possible jurisdiction, and decide I will do this case on

23  whatever the lowest common denominator is.  I will base it on

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    my experience, my understanding of military and federal law in

2    this type of thing.  And what I'm saying, that's the standard

3    I will apply.  If you tell me what they do in Virginia I will

4    listen but, you know, I don't want to hear about 13

5    different -- I will listen to it, I'm just saying it is not

6    particularly helpful to decide the issue.  Some courts

7    somewhere may find waiver.  That is your basic argument.

8        LDC [MR. CONNELL]:  No, Your Honor, it is a little bit

9    more complex than that.  It is unlike the Fourth Circuit or

10   the D.C. Circuit or Ninth Circuit, we do not know what the

11   procedural default rules of the CMCR are.

12            There are, there have been so few decisions from

13   the CMCR, we do not know.  They can divide from a spectrum of

14   available rules.  They could choose at one end the Virginia

15   rule, they could choose at another end an extreme like the

16   military courts, the service courts do, have a very forgiving,

17   in my opinion, waiver rule, the service courts do.  And we

18   don't know where the CMCR is going to come down.

19       MJ [COL POHL]:  No, any court that says that when you

20   object to a particular ruling and that objection is overruled,

21   that that's not now waiver.  Are you familiar ----

22       LDC [MR. CONNELL]:  If you sign the order, in Virginia

23   if you sign the order overruling your objection and you do not

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**1427**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1 separately note an objection in detail to that, like over your

2 signature interlineated, then that is waiver.

3        MJ [COL POHL]:  Okay.

4        LDC [MR. CONNELL]:  Do I think it is a good rule?  No.

5        MJ [COL POHL]:  I think it is a horrible rule, certainly

6 not consistent with any rule I'm familiar with.

7        LDC [MR. CONNELL]:  Not consistent with the service

8 rule, I fully acknowledge that.  We don't know what rule will

9 be applied.

10        MJ [COL POHL]:  We have some idea, perhaps with not much

11 clarity as would be helpful.  But under your theory if you

12 make an objection to a witness statement:  Objection.

13 Hearsay, and I overrule it, is that objection preserved?

14        LDC [MR. CONNELL]:  Yes, because I'm not subsequently

15 signing an order saying I agree to abide by the court's

16 ruling.  That is the distinction between ----

17        MJ [COL POHL]:  You are told if you don't agree to it

18 you are not getting the classified evidence?

19        LDC [MR. CONNELL]:  Right, which is a compulsion no

20 doubt.

21        MJ [COL POHL]:  If you think there is some court out

22 there that may construe that as a waiver, I understand your

23 position.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1        LDC [MR. CONNELL]:  Thank you, sir.

2        MJ [COL POHL]:  Trial counsel, want to be heard any

3   more?

4        TC [LT KORCZYNSKI]:  No, sir.

5        MJ [COL POHL]:  Mr. Connell, do we have one more 13

6   Uniform?  Presumption to say you will do that one too.

7        LDC [MR. CONNELL]:  It is, Your Honor, but can I ask for

8   us to do that perhaps tomorrow?  I understand the government

9   filed a response on Friday and I haven't seen it yet.  I'm not

10  going to claim my time to reply, but I ----

11       MJ [COL POHL]:  I understand.

12       LDC [MR. CONNELL]:  I do need time to read their

13  response.  I mean, tomorrow is perfectly fine.

14       MJ [COL POHL]:  As I think I have told both sides, the

15  practice is, unless it is fully briefed, we won't address it

16  unless both sides want to address it.  So I'm saying this is

17  dated 25 January, I'm not sure I read it yet either.  It will

18  not be timely for this session this week ----

19       LDC [MR. CONNELL]:  Right.

20       MJ [COL POHL]:  ---- under my own rules, so I wouldn't

21  require you to do it.  We can do it.  If you wish to do it

22  later in the week we can, if you feel comfortable doing it.

23  But we can slide it to February, because again, I'm not -- the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  same rules apply to both sides.  Last-minute filings I will

2  consider, but that is not going to give one side or the other

3  an advantage of late filing.

4      LDC [MR. CONNELL]:  Right, sir.  I will advise the court

5  tomorrow, look at it tonight and advise the court tomorrow.

6      MJ [COL POHL]:  Sir.

7      DTC [MR. TRIVETT]:  Good afternoon, Your Honor.  Clay

8  Trivett for the United States.  We have a housekeeping issue

9  at this point that arose from a comment that Commander Ruiz

10 made earlier today based on the establishment of

11 attorney-client relationship between his client and Commander

12 Lachelier.  And at this point we believe the record is a bit

13 cloudy on her issue.

14      She is clearly not detailed.  We are not taking

15 the position she needs to be here today.  But because it is

16 cloudy, because of the nature of the relationship between how

17 say Commander Lachelier conflict waiver the last time we think

18 it is appropriate for you to get a waiver at least for the

19 rest of this week from Mr. Hawsawi she not be here.

20      I spoke to counsel for Mr. Hawsawi.  He was

21 amenable to this.  It is not a concern.

22      MJ [COL POHL]:  Why would you get a waiver of counsel

23 who is not detailed to this case?

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    DTC [MR. TRIVETT]:  I think it is unclear based on the

2    last, if you look at the last session you were asking whether

3    or not, whether or not Mr. Hawsawi wanted to be represented,

4    you said I understand I'm using that term loosely, by

5    Commander Lachelier.  He answered, "Yes."

6    MJ [COL POHL]:  That was "yes" in context to assist

7    Commander Ruiz, but it seems like we are revisiting everything

8    today, earlier today.

9    DTC [MR. TRIVETT]:  Yes, sir.

10   MJ [COL POHL]:  As my understanding is Commander

11   Lachelier's status vis-a-vis representing Mr. Hawsawi in this

12   case is pending before the Chief Defense Counsel.  So I'm

13   going to ask him if he waives the presence of an attorney who

14   is not detailed to represent him here.

15   DTC [MR. TRIVETT]:  That is what we are asking you to

16   do, sir, based on ----

17   MJ [COL POHL]:  Let's say he says no.  So I stop it and

18   wait for an attorney to show up who is not an attorney of

19   record in the case to begin with?

20   DTC [MR. TRIVETT]:  We think that is the aspect, a

21   little unclear, sir.

22   MJ [COL POHL]:  By whom?

23   DTC [MR. TRIVETT]:  On the record as now.  We are not

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  taking the position she needs to be here.  We just think this

2  is the cleanest way to protect the record to make sure that to

3  the extent that there was any right to have her here -- we are

4  not conceding there was ----

5      MJ [COL POHL]:  There is no right to have somebody here

6  unless they are detailed counsel, correct?

7      DTC [MR. TRIVETT]:  I think that's, I think typically,

8  yes.  I think the concern is ----

9      MJ [COL POHL]:  Atypically?

10     DTC [MR. TRIVETT]:  Typically.

11     MJ [COL POHL]:  So you are talking about a typical

12  example?

13     DTC [MR. TRIVETT]:  I think this is a unique situation,

14  sir, based on the fact he had to accept, we had to get a

15  waiver from the court for Commander Lachelier's continued

16  participation.

17     MJ [COL POHL]:  That dealt with a conflict issue.

18     DTC [MR. TRIVETT]:  It did.

19     MJ [COL POHL]:  It was clear she was not here as his

20  detailed counsel.

21     DTC [MR. TRIVETT]:  I don't agree it is as clear as Your

22  Honor says it is, based on review of the record.

23     MJ [COL POHL]:  Okay, so it is your position since the

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  last session in October that she may be misconstrued as

2  detailed counsel, has been absent from the proceedings since

3  the start, we never discussed with Mr. Hawsawi?

4       DTC [MR. TRIVETT]:  No, sir.  I think it changed today

5  when Commander Ruiz specifically said that he believed an

6  attorney-client relationship had developed between Mr. Hawsawi

7  and Commander Lachelier since the last period in time.

8       MJ [COL POHL]:  No, didn't we discuss the

9  attorney-client relationship nonrepresentational last time?

10  What's changed?  What I'm saying, you want me to ask

11  Mr. Hawsawi whether he will excuse ----

12       DTC [MR. TRIVETT]:  My understanding he is going to do

13  that, he is going to agree to that.

14       MJ [COL POHL]:  But it has no legal effect.

15       DTC [MR. TRIVETT]:  I don't necessarily agree with that,

16  sir.

17       MJ [COL POHL]:  Well ----

18       DTC [MR. TRIVETT]:  ---- way to preserve the issue from

19  the government standpoint.

20       MJ [COL POHL]:  It only makes sense to ask questions,

21  only makes sense if there are two possible answers.  Right?

22  Just go with me with this.

23       DTC [MR. TRIVETT]:  Yes, sir.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  MJ [COL POHL]:  Either he can excuse her or he can't.

2  She is not here.  If he says, yes, I excuse her and she is not

3  here, do you think somehow that solves the problem?  What

4  about now we worry about the issue he had to excuse her

5  because the government didn't provide her to be here.  Now we

6  have that issue.

7  DTC [MR. TRIVETT]:  I think the waiver at that point

8  would clarify the issue for the government.

9  MJ [COL POHL]:  What if he says no, no I won't go

10  forward without her here; no, I will sit here, say she has no

11  right to be here to begin with.  Does she?  You say it is

12  unclear in the record.  Let me see if I can clarify that point

13  of it.

14  DTC [MR. TRIVETT]:  Right.

15  MJ [COL POHL]:  Commander Ruiz is the only counsel

16  detailed in this case to represent Mr. Hawsawi in this

17  commission.

18  DTC [MR. TRIVETT]:  That's correct.

19  MJ [COL POHL]:  Lachelier has some type of research

20  support capacity but not as a detailed counsel in this

21  commission.  Therefore, she has no right to be here in that

22  capacity and therefore the accused has no right to waive or

23  request her presence at this time.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**1434**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    DTC [MR. TRIVETT]:  Are those your findings, sir?

2    MJ [COL POHL]:  That is what I just said.

3    DTC [MR. TRIVETT]:  The finds of the military would

4  certainly help clarify that.

5    MJ [COL POHL]:  Thank you.

6    DTC [MR. TRIVETT]:  Thank you.

7    LDC [CDR RUIZ]:  May I?

8    MJ [COL POHL]:  Sure.

9    LDC [CDR RUIZ]:  Based on the -- I think based on the

10  exchange between prosecution and the Court it would be

11  appropriate for me to submit our exhibit ex parte under seal

12  regarding the relative nature of the representation of

13  Commander Lachelier.

14    MJ [COL POHL]:  So it is clear, it was clear to me in

15  October, it was clear to me at nine o'clock, it was clear to

16  me at 1351, was Commander Lachelier has not been detailed to

17  represent the accused before the commission at this time.  Is

18  that correct?

19    LDC [CDR RUIZ]:  That's correct.

20    MJ [COL POHL]:  If you wish to submit something ex parte

21  for me to consider.

22    LDC [CDR RUIZ]:  To the extent now I think you have now

23  articulated that there is no right for her to be here present.

1  This morning you engaged in extensive discussions with

2  Mr. Nevin as well as Ms. Bormann concerning the right to

3  counsel belonging to the accused, not in context of

4  Mr. Hawsawi, nevertheless the court was very much in the

5  affirmative of articulating that is in fact the case.  I think

6  that is where the prosecution's concern arises from.

7  Mr. Hawsawi would stand ready to at least acknowledge in the

8  waiver for this week.

9          I understand their concern.  I do believe that

10  there is that relationship.  I do believe there is inherent

11  within the relationship a counsel right that belongs to the

12  client very much as you articulated very clearly this morning,

13  and it belongs to the client.

14          In that respect I didn't disagree at all with the

15  court.  I think that's where the concern comes and that's

16  where Mr. Hawsawi's waiver would be appropriate, because we do

17  feel there is right to that counsel.

18      MJ [COL POHL]:  Help me here.  What is he waiving?

19      LDC [CDR RUIZ]:  To the extent we believe he has an

20  attorney-client relationship and he has the ability to ask

21  this Court to ask her to come here, represent him along with

22  our defense team, he would be waiving the opportunity to do

23  that this week, only for this week.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1     MJ [COL POHL]:  To do what?

2     LDC [CDR RUIZ]:  To represent him.

3     MJ [COL POHL]:  You indicated earlier that Commander

4 Lachelier has been assisting in this case since March of 2012,

5 correct?

6     LDC [CDR RUIZ]:  That's correct.

7     MJ [COL POHL]:  We did the arraignment on the 5th of May

8 2012, we met subsequent to that.  At no point has Commander

9 Lachelier ever been detailed to this case.  We had the

10 conflict issue that dealt with assistance in a

11 nonrepresentational capacity.  Okay.

12         Now ----

13     LDC [CDR RUIZ]:  I'm not sure how you are defining

14 nonrepresentation.

15     MJ [COL POHL]:  She is not detailed as counsel.  You

16 said she assisted you in research, other things.

17     LDC [CDR RUIZ]:  The term representation is a fairly

18 complex one.  The case law is fairly complex if you are saying

19 nonrepresentational.

20     MJ [COL POHL]:  Let me clarify.  She is not a detailed

21 counsel; she has not been individually military requested

22 counsel, not civilian counsel who, who filed a letter or

23 notice of appearance to appear in this commission.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    LDC [CDR RUIZ]:  That is accurate.

2    MJ [COL POHL]:  Okay.  So therefore, she has no right to

3  be present.  Therefore, how can the accused waive

4  her presence?

5    LDC [CDR RUIZ]:  I don't much see it.  I think it goes

6  back to what the Court said this morning.  I think what I'm

7  having a little bit of trouble processing is the fact the

8  lawyer has the right to be here.  I don't think any of us have

9  the right to be here.  There are mechanisms about which we can

10  be here.  But the clients are the one.  The attorney-client

11  relationship belongs to the client, as you indicated this

12  morning, has the right to counsel.

13       That is where it gets a little fuzzy for me, when

14  you say I have the right to be here.  I don't have right to be

15  here.  We have a mechanism which the court allows me to be

16  here if the client elects to have me represent him.

17    MJ [COL POHL]:  What I'm saying, once you -- this is the

18  question I have.  I think on the Major Hennessy issue, once

19  you appear before the bar representing a client, your options

20  to leave are limited.

21    LDC [CDR RUIZ]:  Yes.

22    MJ [COL POHL]:  Okay.  Good cause, consent of the

23  client.  Okay, basically.  But, to get to that status there

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**1438**

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1   must be a vehicle in our system, detailing individual military

2   requested counsel, or civilian counsel -- learned counsel, but

3   all chosen by the accused.

4        LDC [CDR RUIZ]:  I would submit to the court that is one

5   part of analysis.  But I also submit to the court the analysis

6   in terms of where our options become limited in terms of

7   coming off a case, that would only be one part of that

8   analysis.  So the detailing that I am seeing, civilian

9   counsel, the Court is correct, it is part of the analysis,

10  however it is not the only part of the analysis that turned

11  into when our options as counsel become limited and how we

12  leave a case.

13       MJ [COL POHL]:  Okay, since we are talking about coming,

14  not going here, okay, let's limit it to that.  I don't know

15  who out there in your defense shop is assisting these, your

16  clients, okay?  I know Commander Lachelier only because the

17  issue came up.  There may be a number of others, okay.  Do we

18  have to go through each of them and have their presence or

19  their absence waived by a client?

20       LDC [CDR RUIZ]:  I can't speak on those relationships.

21  And I think that would be basically the slippery slope.  What

22  I can tell the court and what I tried to provide the court is

23  some very concrete, very specific reasons why in this case.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  There is a complex relationship and a relationship that we

2  have articulated today in court.  And I think it is different

3  in many respects from any other relationship.  And I think the

4  court has some of that that we provided in 53.

5          And so I think the analysis -- I understand what

6  you are saying.  I think it is a valid point, a valid

7  question.  I don't think we can expand it that much.  It has

8  to continue to be based on the facts of this case and based on

9  the circumstances of this case alone.

10  MJ [COL POHL]:  Commander Lachelier has never appeared

11  in this court in any capacity, correct?

12  LDC [CDR RUIZ]:  Correct.

13  MJ [COL POHL]:  I mean, she has never even sat at the

14  table to assist you.

15  LDC [CDR RUIZ]:  Correct.  She has been in the gallery,

16  she's been in the ----

17  MJ [COL POHL]:  Whatever, I'm talking about this part.

18  LDC [CDR RUIZ]:  Sure.

19  MJ [COL POHL]:  People sit in gallery, watch on TV, that

20  is up to them.  Okay.  So now we are going to do a waiver of

21  the presence of somebody who has never been present.

22  LDC [CDR RUIZ]:  I think the point, I think to some

23  degree ----

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [COL POHL]:  It appears you and the government are

2  agreeing.

3    LDC [CDR RUIZ]:  To the degree there is a relationship

4  we agree that is appropriate procedure and I'm not sure where

5  resistance comes.  We don't have to do it.  I'm perfectly fine

6  leaving the issue as it stands.

7    MJ [COL POHL]:  Okay.  I understand the concerns of both

8  parties.  I just don't understand the concept of waiving

9  somebody who has no duty, right, responsibility to be here.

10  Because that logic applies ----

11    LDC [CDR RUIZ]:  I understand ----

12    MJ [COL POHL]:  ---- anybody else.

13    LDC [CDR RUIZ]:  I understand that is the court's

14  position, there is no duty or responsibility, and I understand

15  that at this stage.

16    MJ [COL POHL]:  Okay.  Thank you.

17      Next one on the list is 80.  I know that is also

18  tied in with 52.  And I know there is a lot of classified

19  information in there.  I believe we can address this without

20  getting into the classified nature in open court.

21      Ms. Baltes.  I'm throwing it out, I'm not ----

22    TC [MS. BALTES]:  The only thing I can say, I'm not sure

23  that's possible because the government filed response to 80

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  classified, so in order to respond to the defense motion, we

2  were unable to do it in an unclassified manner.  So I'm not

3  sure we would be able to presents oral argument; however, we

4  are fine with resting on the papers on 80.

5        MJ [COL POHL]:  Okay.  In 80 includes 52?

6        TC [MS. BALTES]:  I prefer not to ----

7        MJ [COL POHL]:  Okay.  Okay.  Is it the government's

8  position that 80 is consistent with prior pleadings in this

9  case?

10        TC [MS. BALTES]:  Yes, I think you just -- yes.

11        MJ [COL POHL]:  Okay.  Okay.

12        TC [MAJ KIRK]:  I think we can discuss it more at the

13  505(h) if you feel ----

14        MJ [COL POHL]:  We can.  Defense, here are two options.

15  We can decide this on the pleadings with the understanding

16  that we can always do reconsideration if you want to, or we

17  can address it, address the classified things in a closed

18  session.  And each defense team will get to vote on this, so.

19          Here is the question:  Is the, the government's

20  position is to decide 80 -- because the government response is

21  classified -- on the pleadings without oral argument.  Is that

22  correct, Ms. Baltes?

23        TC [MS. BALTES]:  That's correct.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1      MJ [COL POHL]:  Okay.

2      LDC [MR. CONNELL]:  Your Honor ----

3      MJ [COL POHL]:  Alternatively, that will require the

4  agreement of all five defense teams.  Alternatively, we will

5  address the classified part of it in the 505(h) session and

6  determine what can be discussed in open court versus if we

7  need to go into closed session.

8          So my simple question is this, which I may even

9  get a simple answer, is:  Option A, decide on the pleadings

10  without oral argument with the understanding that when you get

11  the ruling, if you wish you can always apply for

12  reconsideration, because you never had a chance for oral

13  argument -- I would be likely to grant such request -- or B,

14  delay discussing the issue at all until we do the 505(h)

15  hearing.  Then, if necessary, bifurcate into closed and open

16  session.

17          Option A is rest on pleadings with the

18  understanding that that doesn't, that reconsideration would be

19  generously granted; or option B, proceed to address this

20  initially in the 505(h) session to determine what can be

21  discussed in an open session vis-a-vis closed session.

22      LDC [MR. CONNELL]:  May I consult for a moment, Your

23  Honor?

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [COL POHL]:  Sure.  Would it be helpful to take a

2  short recess?

3    DC [MR. NEVIN]:  Yes, Your Honor.

4    MJ [COL POHL]:  Okay.  Commission will be in recess for

5  15 minutes.

6  **[The Military Commission recessed at 1402, 28 January 2013.]**

7  **[The Military Commission was called to order at 1426, 28**

8  **January 2013.]**

9    MJ [COL POHL]:  Commission is called to order.  All

10  parties again are present that were present when the

11  commission recessed.

12         Mr. Connell.

13    LDC [MR. CONNELL]:  B.

14    MJ [COL POHL]:  B?  Okay, then we will do B.  It took

15  one vote for B.

16    DC [MR. NEVIN]:  No, no, we got five, six votes for B.

17  No question about that.  But, Your Honor, I want to say, I

18  take it that B means that we are going to do this in a 505 and

19  that some portion of this will turn out to be closed or

20  secret.  And on behalf of Mr. Mohammad, I object to

21  proceedings being closed, because they deal with preservation

22  of evidence of a detention facility.  It's a critical matter

23  to Mr. Mohammad.  It's central to the case as far as he's

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1 concerned.

2     MJ [COL POHL]:  Mr. Nevin ----

3     LDC [MR. NEVIN]:  I object to the proceedings being

4 closed here.

5     MJ [COL POHL]:  Okay.  Let's do the 505(h) hearing, and

6 then if we do close proceedings, you can object.  Because

7 there's no decision been made whether proceedings will be

8 closed or not, got it.

9     LDC [MR. NEVIN]:  Thanks, Your Honor.

10     MJ [COL POHL]:  No problem.

11     LDC [CDR RUIZ]:  Judge, I would just simply adopt Mr.

12 Nevin's argument on behalf of Mr. Hawsawi.

13     LDC [MS. BORMANN]:  I'm sorry.  I couldn't hear.

14     **[Due to the security button being pushed, chief**

15 **security advisor and attorney advisor conferred with the**

16 **military judge.]**

17     MJ [COL POHL]:  Trial counsel, note for the record that

18 the 40-second delay was initiated, not by me.  I'm curious as

19 to why.  What Mr. Nevin said is, if we need to go into -- I

20 got the issue.  What Mr. Nevin said is simply on the caption

21 of his motion that is unclassified.  If you don't feel we can

22 discuss this now, let me know, but I'm just trying to figure

23 out.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    TC [MS. BALTES]:  We can address it in 505(h).

2    MJ [COL POHL]:  I want to address this too because I

3  want -- if some external body is turning the commission off

4  under their own view of what things ought to be, with no

5  reasonable explanation because I, there is no classification

6  on it, then we are going to have a little meeting about who

7  turns that light on or off.

8    TC [MS. BALTES]:  I understand and I can provide

9  additional explanation at the 505(h) hearing.

10    MJ [COL POHL]:  Sure.  Exactly what he said.

11        Mr. Nevin.

12    DC [MR. NEVIN]:  Your Honor, on behalf of Mr. Mohammad I

13  would like to know who has the permission to turn that light

14  on and off, who is listening to this, who is controlling these

15  proceedings, or controlling that aspect of these proceedings.

16    MJ [COL POHL]:  Got it.

17    DC [MR. NEVIN]:  I was under the impression that the

18  court CSO was, commanded that light in this process.  So on

19  behalf of Mr. Mohammad respectfully I request ----

20    MJ [COL POHL]:  I understand.  We will address that at

21  the 505(h) hearing, then we will put it on the record if we

22  can.  But I'm not sure -- I will leave it at that.

23    LDC [MS. BORMANN]:  Judge, on behalf of Mr. Bin'Attash

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  we join in Mr. Nevin's request and we note that Mr. Nevin

2  repeated the name of his motion which I won't repeat right now

3  for fear of setting off the 40-second delay, but my signature

4  is attached to that motion.

5       MJ [COL POHL]:  I got it.

6       LDC [CDR RUIZ]:  Judge, we adopt Mr. Nevin's argument as

7  well as Ms. Bormann's.  I think the main concern is that

8  moving forward from this point forward we know there is

9  another body or party who is in control of this proceeding in

10 turning that light on and off.  Before we proceed any further,

11 we can only assume that maybe they are monitoring additional

12 communications, perhaps when we are at counsel table.  We know

13 we have green lights that have the ability to record.  We

14 think this is an answer and question we have to have precedent

15 to proceeding with this commission.

16      MJ [COL POHL]:  Got it.  Got it.  What we will do at

17 this time is discuss with each accused his right to be present

18 and his choice if he so desires to waive that presence.  The

19 way I intend to proceed is to slowly go through the entire

20 list of rights and ask each accused individually if they

21 understand their rights rather than going through it five

22 times as I have done before.

23      Mr. Nevin.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    DC [MR. NEVIN]:  And I just wanted to ask the Court to

2    clarify where we came out on this question.  We asked the

3    Court to have this be a waiver that would not need to be

4    repeated at the beginning of each subsequent set of

5    hearings ----

6    MJ [COL POHL]:  At this point in time, Mr. Nevin, is

7    since this just came up today my intent is probably, emphasis

8    the word "probably," not require to be repeated for the

9    February sessions since they are only a week away.  But

10    definitely to be repeated at the April sessions because that

11    is months away.  With me on this?

12    DC [MR. NEVIN]:  No, I understand what the Court is

13    saying.

14    MJ [COL POHL]:  It needs, I'm of the view it needs to be

15    revisited frequently but not excessively.  But what I'm saying

16    is today we will probably cover the next two sessions because

17    they are close in time.  But come April, my intent now is to

18    require the same procedure again.  I'm just -- if you look at

19    the absence of the accused, the authorities are kind of all

20    over the place, but one of the things they talk about is make

21    sure it is an informed waiver so that's at this point in time

22    where I intend to do it.  I'm always willing to listen to a

23    counter- argument.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1        Ms. Bormann, I don't know if you need an
2  invitation, but go ahead.
3        LDC [MS. BORMANN]:  Thank you.  With respect to
4  Mr. Bin'Attash, as Your Honor has noted in 37 H is your order,
5  the detainees, accused Mr. Bin'Attash in particular has said
6  to me, is required to execute a written waiver each time he
7  chooses not to appear in court.  And the procedure for that,
8  as I understand it, after hearing the testimony a few times,
9  is that somebody from the SJA's office, a lawyer, goes to
10  where Mr. Bin'Attash is housed and expresses to him that he
11  has the right to be in court.  And then based upon
12  Mr. Bin'Attash's responses, he either comes to court or he
13  chooses not to come to court.  If he chooses not to come to
14  court, he signs an express written waiver.
15        Now, I can tell you that Mr. Bin'Attash is well
16  aware of his right to be in court for all of this session, all
17  of the next session into February, and all of April.  And so
18  when he is apprised of that and he executes a written waiver
19  each and every day he chooses not to be in court, we believe
20  that that sufficiently covers the record.  There is no doubt
21  that he understands his right.
22        What we are asking for is going forward until the
23  trial, Mr. Bin'Attash will be in court.  I mean, he chooses to

1  be here on a number of occasions when he doesn't have to.

2  But, it should be his right to waive and there shouldn't

3  automatically be a requirement that every two weeks or every

4  six weeks or whatever arbitrary number is set up that he has

5  to, to come in on a given date.  So that's the remedy we are

6  asking for.

7          And if you tell me that I need to do it in writing

8  for April, I will do it in writing for April.  But if we can

9  address the issue now, that I think would save everybody some

10  time and energy.

11          MJ [COL POHL]:  Got it.

12          General Martins.

13          TC [BG MARTINS]:  Your Honor, just to be clear, the

14  government does not agree with this notion that there

15  shouldn't be a revisiting of this frequently.  In the cross

16  case and others in which we litigated this, revisiting it

17  frequently is necessary in open court, particularly in this

18  jurisdiction of the D.C. circuit cases on this.

19          So we believe at the very least the practice that

20  the courts seem to have adopted, the first session of the

21  week, and then in written waivers thereafter, then if on

22  notice of any change of mind of the accused, revisiting it

23  then.  There is no right to be absent, there is a right to be

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  present.

2      MJ [COL POHL]:  Thank you.

3          Mr. Mohammad, Mr. Bin'Attash, Mr. Bin al Shibh,

4  Mr. Ali, Mr. Hawsawi, at this time I will talk to each of you

5  directly.  I'm going to explain your right to be present and

6  your right, if you so choose, to be voluntarily absent.

7          When I get done with the explanation, I'm going to

8  ask you each a very simple question of whether or not you

9  understand what I have just told you and understand your

10  rights to be present and if you so choose to be voluntarily

11  absent.  As I go through these if you have any question, just

12  ask me.

13          Each of you have the right to be present during

14  all sessions of the commission.  Each of you may request to

15  absent yourself from any session.  And if you do so, such

16  absence is voluntary and of your own free will.  If you do

17  decide to be absent, your voluntary absence from any session

18  is an unequivocal waiver of the right to be present during

19  that session.

20          Your absence from any session may negatively

21  affect the presentation of the defense in your case.  Your

22  failure to meet with and cooperate with your defense counsel

23  may also negatively affect the presentation of your defense.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  Under certain circumstances, your attendance at a session can

2  be compelled regardless of your personal desire not to be

3  present.

4         Regardless of your voluntary waiver to attend a

5  particular session of the commission, you have the right at

6  any time to decide to attend any subsequent session.  In that

7  regards, that if you change your mind after being told in the

8  morning you don't want to attend the morning session but want

9  to attend the afternoon session, you may tell the guard force

10 you changed your mind and you want to come to the afternoon

11 session.

12        You will be informed of the time and date of each

13 commission session prior to the session to afford you the

14 opportunity to decide whether you wish to attend that session.

15        Mr. Mohammad, do you understand what I have said?

16 ACC [MR. MOHAMMAD]:  Yes, I do.

17 MJ [COL POHL]:  Do you have any question?

18 ACC [MR. MOHAMMAD]:  No.

19 MJ [COL POHL]:  Mr. Bin'Attash, do you understand what I

20 just said?

21 ACC [MR. BIN'ATTASH]:  Yes.

22 MJ [COL POHL]:  Do you have any questions?

23 ACC [MR. BIN'ATTASH]:  Yes.  We don't have any

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1  motivating factors that would invite us to come to the court.

2  We have been dealing with our attorneys for about a year and a

3  half and we have not been able to build any trust with them.

4  Our attorneys are bound and we are bound also.  There are many

5  things that the court could do to help us, help motivate us to

6  attend the court, but there is nothing that would motivate us

7  to come.

8      MJ [COL POHL]:  Please stop.

9      ACC [MR. BIN'ATTASH]:  I understand my right very well.

10  But we don't want this to be a personal issue between us and

11  the judge.

12      MJ [COL POHL]:  Okay.  You understand your rights,

13  Mr. Bin'Attash.

14      ACC [MR. BIN'ATTASH]:  Yes, I understand my rights very

15  well.  But I want you to understand the situation that we are

16  in.  The government does not want us to hear or understand,

17  the prosecution does not want us to hear or understand or say

18  anything.  And they don't even want our attorneys to do

19  anything.

20      MJ [COL POHL]:  Mr. Bin'Attash, but you do understand

21  your right to be present?

22      ACC [MR. BIN'ATTASH]:  Yes, I understand my rights very

23  well.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [COL POHL]:  Thank you.  Mr. Bin al Shibh, do you

2  understand your rights to be present and your ability to waive

3  that right?

4    ACC [MR. BIN AL SHIBH]:  Yes, I understand my rights.

5    MJ [COL POHL]:  Do you have any question about your

6  rights?

7    ACC [MR. BIN AL SHIBH]:  I have no questions.

8    MJ [COL POHL]:  Mr. Ali, do you understand your rights

9  to be present and your ability to waive that right?

10    ACC [MR. ALI]:  Yes, I understand.

11    MJ [COL POHL]:  Do you have any questions about that?

12    ACC [MR. ALI]:  No, I have no questions.

13    MJ [COL POHL]:  Mr. Hawsawi, do you understand your

14  right to be present at all sessions of the commission and your

15  right -- excuse me, and your ability to waive that right?

16    ACC [MR. HAWSAWI]:  Yes, I do.

17    MJ [COL POHL]:  Okay.  I'm sorry, Commander Ruiz, was

18  that from him?

19    LDC [CDR RUIZ]:  I just thought the answer hadn't been

20  heard, that's all.

21    MJ [COL POHL]:  Mr. Hawsawi, do you have any questions

22  about your rights?

23    ACC [MR. HAWSAWI]:  No.

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**1454**

*[Next page 1454A]*

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

1    MJ [COL POHL]:  With that, the Commission will be in

2  recess until 0900 tomorrow.  Once the courtroom is cleared, we

3  will address issues in a 505(h) hearing.  Commission is in

4  recess.

5  **[The Military Commission recessed at 1446, 28 January 2013.]**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*UNOFFICIAL/UNAUTHENTICATED TRANSCRIPT*

**1454A**

*[Next page 1455]*